George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM, LLC**
8985 South Eastern Ave., Suite 100
Las Vegas, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: info@freedomlegalteam.com
*Attorneys for Plaintiff Kim Chatman*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Kim Chatman, | Case No. 2:22-cv-02112-APG-NJK |
| Plaintiff, | **Stipulation and Order to Arbitrate And Stay Claims Against Goldman Sachs Bank** |
| v. | |
| Equifax Information Services, LLC; Experian Information Solutions, Inc.; Goldman Sachs Bank; and Freedom Plus Corporation, | |
| Defendants. | |

Kim Chatman ("Plaintiff") and Goldman Sachs Bank ("Defendant") stipulate and agree as follows:

1.      The Parties hereby stipulate and agree that Plaintiff will submit her claims in this action against Defendant **only** to final and binding arbitration as provided by the Agreement annexed hereto as Exhibit 1.

2.       Plaintiff shall initiate the arbitration within ninety (90) days of the entry of this stipulated order.

3.      Plaintiff's claims against Defendant **only**, and any discovery between the Parties shall be stayed pending arbitration.

4.      Judgment upon the award rendered in the arbitration may be entered in this Court.

WHEREFORE, the Parties respectfully request the Court so-order this stipulation and refer Plaintiff's claims against Defendant **only** to final and binding arbitration.

1

*(left margin)* FREEDOM LAW FIRM, LLC
8985 S. Eastern Ave. Ste. 100
Las Vegas, Nevada 89123
OFFICE: (702) 880-5554 FAX: (702) 385-5518

It is so stipulated.

Dated: April 11, 2023.

**FREEDOM LAW FIRM, LLC**

/s/ Gerardo Avalos
George Haines, Esq.
Gerardo Avalos, Esq.
8985 South Eastern Ave., Suite 100
Las Vegas, NV 89123
*Counsel for Plaintiff*

**KAEMPFER CROWELL**

/s/ Robert McCoy
Robert McCoy, Esq.
Sihomara L. Graves, Esq.
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
*Counsel for Defendant Goldman Sachs Bank*

**ORDER**

IT IS SO ORDERED:

UNITED STATES DISTRICT JUDGE

DATED:    April 12, 2023

FREEDOM LAW FIRM, LLC
8985 S. Eastern Ave. Ste. 100
Las Vegas, Nevada 89123
OFFICE: (702) 880-5554  FAX: (702) 385-5518

# EXHIBIT 1



# INSTALLMENT LOAN AGREEMENT

**READ THIS ENTIRE AGREEMENT CLOSELY BEFORE SIGNING**. IT CONTAINS IMPORTANT DISCLOSURES AND THE TERMS OF YOUR LOAN. FOR EXAMPLE: (1) THE FEDERAL TRUTH IN LENDING DISCLOSURE APPEARS BELOW AND (2) SECTION 2 PROVIDES IMPORTANT DETAILS ABOUT PAYMENTS AND HOW CERTAIN PRODUCT FEATURES WORK.

> **SECTION 18 REQUIRES CLAIMS TO BE ARBITRATED AND FORBIDS CLASS ACTIONS UNLESS YOU (1) ARE SUBJECT TO THE PROTECTIONS OF THE MILITARY LENDING ACT OR (2) EXERCISE YOUR RIGHT TO REJECT ARBITRATION UNDER SECTION 18(e) BY PHONE OR MAIL (WE MUST RECEIVE YOUR REJECTION WITHIN 90 DAYS AFTER YOUR LOAN AGREEMENT DATE).**

**Lender:**
Goldman Sachs Bank USA, Salt Lake City Branch
Salt Lake City, Utah

**Borrower:**
Kim Chatman
2900 S Valley View Blvd,
Lot 279
Las Vegas, NV 89102

**Loan Agreement Date:** 2017-11-02

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE (e) | AMOUNT FINANCED | TOTAL OF PAYMENTS (e) |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all scheduled payments |
| 9.99% | $6,308.25 | $23,000.00 | $29,308.25 |

**Your payment schedule will be ("Payment Schedule"):**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | $488.56 | Monthly beginning on the date that is one month after your Loan Agreement Date. |
| 1 | $483.21 **(e)** | |

**Prepayment:** If you pay this loan early, you will not have to pay a penalty.

See the rest of this Installment Loan Agreement for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

- - - - - - - - - - - - - - - -

(e) means estimated.

**Itemization of Amount Financed**

The entire Amount Financed of $23,000.00 is being given to you directly. There are no deductions.

**[YOUR INSTALLMENT LOAN AGREEMENT CONTINUES ON THE NEXT PAGE]**

As used in this Agreement, **"you"** and **"your"** mean the borrower listed above and **"us," "we"** and **"our"** mean Goldman Sachs Bank USA and any of our successors, assigns, agents and service providers.

1.   **Agreement to Pay.**

By signing below, you agree to the terms of this Installment Loan Agreement ("**Agreement**"). You agree to pay to us the Amount Financed shown on the first page of this Agreement (your "**Amount Financed**") together with interest, which accrues daily on the outstanding principal balance at an annual interest rate of 9.99% (together referred to as the "**Loan**"). Because this is a daily simple interest Loan, interest accrues every day on the principal balance that is outstanding. To the extent permitted by applicable law, interest will continue to accrue after maturity or acceleration of this Agreement (and after any judgment) every day until you pay in full all amounts due under this Agreement.

2.   **Payments.**

   a.   **General.**

   1.   Scheduled amounts due under this Agreement are payable as follows: (i) 59 equal monthly payments of $488.56 (each, a **"Monthly Payment"**); and (ii) a single final payment of the remaining amount due under this Agreement (**"Final Payment"**). Your Final Payment will be due one month after the due date of your last Monthly Payment. The date that your Final Payment is due is your maturity date.

   2.   If you pay late, pay less than your amount due or miss a payment, you will pay more interest and your Final Payment will be larger as a result. In addition, failure to make payments in full and on time may result in an event of default under Section 5 of this Agreement.

   3.   If you pay early or you pay more than your amount due, you will pay less interest and your Final Payment will be reduced as a result.

   4.   See Section 2(b) for details about how we apply certain early, partial or missed payments and how that impacts your monthly amount due.

   5.   Payments will be applied first to accrued and unpaid interest and then to your outstanding principal balance.

   6.   Payments that we receive at or before 5:00p.m. ET will be credited to your Loan as of that day. Payments that we receive after 5:00p.m. ET will be credited to your Loan on the next day. We reserve the right to reject any payments that are not made in accordance with this Agreement or the instructions that we provide.

   7.   For purposes of this Agreement, you "make" a payment or a payment is deemed "made" only when we have received it and credited it to your Loan.

   b.   **Monthly Amount Due.**

   Your monthly amount due consists of your Monthly Payment (or, when applicable, your Final Payment) plus any past due amount from any prior monthly payment period(s).

   1.   *Partial or Missed Payments.* If you fail to make a payment or make a partial payment, all past due amounts will be added to your monthly amount due on your upcoming due date.

   2.   *Payment Period.* You must make your Monthly Payment (or, when applicable, your Final Payment) each month during your Payment Period. "**Payment Period**" is defined as: (i) the period that begins on the day that you sign this Loan Agreement and ends at 5:00 p.m. ET on your first payment due date; and after that, (ii) the period that begins immediately after the previous payment period closes and ends at 5:00 p.m. ET on your upcoming due date. If you pay more than your Monthly Payment in any Payment Period, the excess amount **will not** be applied to any subsequent payments.

   *For example, if your due date is the 20th of each month, your April Payment Period will begin immediately after 5:00 p.m. ET on March 20 and end at 5:00 p.m. ET on April 20. Any payment that you make during this Payment Period will be applied first to any past due balances and then to your April Monthly Payment.*

*This payment will be applied to interest and principal in accordance with Section 2(a)(5) above.*

c. **Due Dates.**

If your due date is on the 29th, 30th or 31st and the month does not have those days, your payment will be due on the last day of the month.

d. **Due Date Changes.**

1. You may change your due date up to three times during the life of your Loan.

2. This feature will not be available while you have any past due amounts outstanding or during any payment deferral.

3. If you are applying online, you may change your first due date as part of the initial online Loan setup process. If you are applying through a paper application, you may not change your first due date.

4. Except as described in Section 2(d)(3) above, you will not be able to request changes to your due date until after your first due date.

5. You may not change your due date during your final monthly payment period.

6. In many cases, your due date change will not apply to your upcoming due date. In these situations, you will need to make your upcoming payment on your previously scheduled due date. When you request a due date change, we will tell you when the change will take effect.

e. **Payment Deferral.**

1. The payment deferral benefit allows qualifying borrowers to defer a Monthly Payment for one month (a "**Payment Deferral**"). To qualify: (i) you must make at least 12 consecutive Monthly Payments prior to any Payment Deferral; and (ii) at the time that you request a Payment Deferral, you must have made **all** of your prior Monthly Payments in full and on time.

2. If you ever fail to make a Monthly Payment in full and on time, you **will not** qualify for a Payment Deferral (even if you previously made more than 12 Monthly Payments in full and on time).

   *For example, if you made your first 15 Monthly Payments in full and on time and then made your 16th Monthly Payment 1 day after your due date, you **will not** qualify for a Payment Deferral.*

3. Each time that you use a Payment Deferral, you can qualify for another one if (i) you make at least 12 additional Monthly Payments after using your prior Payment Deferral and (ii) at the time that you request your new Payment Deferral, all of your prior Monthly Payments have been made in full and on time.

4. Payment Deferrals do not accumulate. That means that, once you qualify for a Payment Deferral, you will not qualify for another one until you use that Payment Deferral and meet the requirements set forth in Section 2(e)(3) above again.

5. To use a Payment Deferral, you must call 844-627-2872 (toll free) prior to 5:00p.m. ET on the day that is 16 days before the Monthly Payment due date that you want to defer or, if the day described in the previous clause is not a Business Day (as defined below), 5:00p.m. ET on the previous Business Day . Our business days are Monday through Friday, excluding federal holidays ("**Business Days**"). At any time during your Loan term, at our sole discretion, we may elect to change the date by which you must call us to use a Payment Deferral. If we change this date, we will not increase the advance notice required to use a Payment Deferral. We will notify you in writing (for example, through a notice in your monthly statement) if we elect to make this change.

6. When you use a Payment Deferral, we will:

   ▪ waive the interest that would otherwise have accrued during the month that your payment was deferred; and

  - extend your Loan term by one month (interest will accrue during this month).

7. Your obligation to make payments will resume with the Monthly Payment after your deferral.

   *For example, assume the due date for your 14th Monthly Payment is March 23rd and you make a Payment Deferral request on March 1st. If you have made all of your previous Monthly Payments in full and on time:*

   - *your next Monthly Payment will be due on April 23rd;*

   - *we will waive interest for one month;*

   - *we will extend your Loan term for one month; and*

   - *your Final Payment that was originally due on December 23rd will now be due on January 23rd (interest will accrue during this month).*

f. **Making Payments.**

   1. Payment must be made to us at an address or through a manner that we designate.

   2. We will only accept payments drawn on a bank account or credit union member share account maintained in the U.S. or U.S. money orders.

   3. All payments must be payable in U.S. dollars.

   4. You must not make payments using cash or coin.

g. **Electronic Funds Transfer ("EFT") Payments.**

   We offer you the option to make payments by EFT. EFT services involve us initiating one or more electronic debits from a deposit account that you specify. While you are not required to use EFT services that we provide, by signing this Agreement, you agree that the EFT Authorization that is attached as Appendix A applies to any EFT service that you use.

h. **Permission to Convert Checks to EFTs.**

   When you make a payment by check, you authorize us either to (1) use information from your check to make a one-time EFT from your account or (2) process the payment as a check transaction.

**3. Prepayment.**

**You may prepay your Loan in full or in part at any time without penalty. You may prepay your Loan in full by paying all outstanding principal plus accrued and unpaid interest as of the date of your prepayment.**

**4. Use of Proceeds.**

You agree that you will not use any Loan proceeds for any illegal purposes or for any student loan purposes, which includes using Loan proceeds to refinance an existing student loan or to pay for education-related expenses. Examples of education-related expenses include tuition and fees, books, supplies, miscellaneous personal expenses, room and board. You agree that you will not transfer or pay any Loan proceeds to a Goldman Sachs entity other than Goldman Sachs Bank USA (for example, to invest in funds managed by a Goldman Sachs entity) without our prior written consent. You understand that we may decline to consent for any reason. If you would like to verify if an entity is a Goldman Sachs entity, please write us at the Notice Address in Section 10 or call us at 844-627-2872 (toll-free).

**5. Default.**

Subject to applicable law, the following are events of default under this Agreement:

a. You fail to make any payment in full, in accordance with this Agreement, within 30 days after a due date (for example, a payment is returned unpaid and you fail to make that payment within 30 days after its due date);

b. Any bankruptcy, receivership or insolvency proceeding is started by or against you, or you make any general

assignment for the benefit of creditors;

c.  You fail to meet any other obligation in this Agreement; or

d.  Any representation or information that you have made or provided to us, either in your application or in connection with this Agreement, is materially inaccurate or incomplete.

## 6.  Our Remedies.

If an event of default occurs, you die or you are declared legally incompetent, subject to applicable law (including any notice or right to cure):

a.  We may declare the entire amount of this Loan (including the outstanding principal balance and accrued and unpaid interest) immediately due and payable; and/or

b.  We may exercise any other right available under applicable law.

## 7.  Waivers.

a.  We may accept late or partial payments without giving up any of our rights. We may also delay enforcing any of our rights without giving them up. We do not have to (i) give notice that amounts due have not been paid ("**notice of dishonor**"), (ii) demand payment of amounts due ("**presentment**"), or (iii) obtain an official certification of nonpayment ("**protest**"). You waive notice of dishonor, presentment and protest. If you default, we may require you to pay immediately, in full, even if we have not done so in the past or you are not currently in default. No matter how many times we do not enforce our rights or delay enforcing them, we still preserve all of our rights and do not waive them.

b.  To the fullest extent permitted by applicable law, no extension of time for payment of any part of the Loan, and no alteration, amendment or waiver of any provision of this Agreement or any other document or agreement relating to the Loan or this Agreement, shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, except to the extent explicitly agreed pursuant to Section 13.

## 8.  Applicable Loan Charge Maximums Will Be Observed.

If any law applicable to this Agreement or the Loan is finally interpreted so that any amount collected or to be collected in connection with the Loan or this Agreement exceeds the amount permitted by law or this Agreement, then: (a) any such amount shall be reduced to the extent necessary to be in compliance with the maximum permitted amount; and (b) any amount already collected, to the extent such amount would otherwise exceed the permitted amount, will be refunded to you. We may choose to make this refund by reducing the Loan and/or by making a direct payment to you.

## 9.  Severability.

The unenforceability of any provision of this Agreement shall not affect the enforceability or validity of any other provision, except as set forth in Section 18(f).

## 10.  Notices; Updating Information.

All notices to us must be sent to P.O. Box 45400, Salt Lake City, UT 84145-0400 ("**Notice Address**") in accordance with this Agreement. We may change the Notice Address or any phone numbers contained in this Agreement at any time by providing you with written notice. To the extent permitted under applicable law, any notice that you send to us will not be effective until we receive it and have had a reasonable opportunity to act on such notice. Notices that we send to you (including by email or other electronic transmission) may be delivered to any address we maintain for you in our records. Any notice that we send to you will be effective and deemed delivered when sent. You must notify us of any changes to your name, mailing or email address or phone number within 15 days of the change in writing at the Notice Address or through another method that we provide.

## 11.  Assignment.

You may not assign any of your rights or obligations under this Agreement without our prior written permission. We are not required to give any such permission. We may assign this Agreement or any of our rights or obligations under this Agreement (including any personal information held by us in connection with this Agreement) in whole or in part at any

time without your permission. Unless prohibited by applicable law, we may exercise our rights under the previous sentence without telling you. Your rights and obligations under this Agreement apply to all of your successors and permitted assigns, if any. Our rights and obligations under this Agreement apply to us and each of our successors and assigns.

12. **Governing Law.**

    a. Except as provided in Section 12(b) below, this Agreement shall be governed by and construed in accordance with federal law and any applicable laws of the State of Utah without regard to rules concerning conflicts of law or choice of law.

    b. If you are a New York resident as of the Loan Agreement Date, as evidenced by your address on the first page of this Agreement, this Agreement shall be governed by and construed in accordance with federal law and the laws of the State of New York, including New York law relating to limits on interest (for example, usury), without regard to rules concerning conflicts of law or choice of law. If you later become a New York resident during the term of the Loan Agreement, the laws of the State of New York, excluding New York law relating to limits on interest (for example, usury), will apply to a claim or defense that you assert if the facts and circumstances giving rise to such claim or defense occurred in whole or in part in New York.

13. **Amendment.**

**Except as otherwise provided herein, this Agreement may not be amended, modified or limited except by a written agreement.**

14. **Contacting You; Telephone, Text Messages and Other Methods of Communication.**

    a. You agree that we may contact you using any kind of telecommunications technology. This includes contacting you by automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems, automated email systems or other systems. You agree that we may contact you about upcoming due dates, missed or returned payments, or for any other non-telemarketing reason. You agree that we may use any telephone numbers (including wireless, landline and voice over IP numbers) or email addresses that you give to us, from which you call us or at which we believe we can reach you. You may change your contact preferences at any time by calling us at 844-627-2872 (toll-free). You understand and agree that anyone with access to your telephone or email account may listen to or read the messages that we leave or send to you. You agree that we will not be liable for anyone accessing those messages. You agree that we will not be liable for any charges that you incur in connection with text messages, emails or other communications that we send to you.

    b. You agree to notify us immediately if you change telephone numbers or are no longer the subscriber or usual user of a telephone number that you give to us. You agree that we may monitor and record your telephone calls and other communications with us. At any time, you may withdraw your consent to receive text messages and calls to your cell phone or to receive artificial or prerecorded voice message system calls by calling us at 844-627-2872 (toll-free). To stop text messages, you must reply "STOP" to any text message we send to you. To stop marketing emails, you must follow the opt-out instructions provided at the bottom of our marketing emails.

15. **Credit Bureaus.**

    a. **General.**

        YOU AGREE THAT WE MAY REPORT INFORMATION ABOUT YOUR LOAN TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS OR OTHER DEFAULTS ON YOUR LOAN MAY BE REFLECTED IN YOUR CREDIT REPORT.

    b. **Disputes.**

        If you believe we have reported inaccurate information about you or your Loan to a credit bureau, call us at 844-627-2872 (toll-free) or send a written notice to the Notice Address in Section 10, Attention: Credit Bureau Disputes.

16. **Bankruptcy.**

You agree that you are not a debtor under any proceeding in bankruptcy, insolvency or similar proceeding, have no current intention of filing a petition for relief under the United States Bankruptcy Code and have not consulted an attorney regarding a potential bankruptcy filing within the past 6 months. Any communication with us required or permitted under the United States Bankruptcy Code must be in writing and must be sent to us at the Notice Address in Section 10, Attn: Bankruptcy Notice.

**17.   Non-Negotiable Instrument.**

This Agreement is not a negotiable instrument.

**18.   Dispute Resolution; Agreement to Arbitrate; Class Action Waiver**

**This Section 18 does not apply to service members and their dependents who are entitled to protection under the Military Lending Act (10 U.S.C. § 987). If you would like more information about whether you are entitled to protection under the Military Lending Act and whether this section applies to you, please call us at 844-627-2872 (toll-free).**

Many customer concerns can be resolved by calling us at 844-627-2872 (toll-free) or writing us at the Notice Address in Section 10. If a dispute cannot be resolved informally, this Section 18 explains how claims (whether by you against us, or by us against you) will be resolved.

   a. **Definitions.**

   For purposes of this Section 18, "**Claim**" means any current or future claim, dispute or controversy relating in any way to this Agreement or the Loan, except for the validity, enforceability or scope of the arbitration provision set forth in Section 18(d) below. "**Claim**" includes: (i) initial claims, counterclaims, crossclaims and third-party claims; (ii) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (iii) claims by or against any third party using or providing any product, service or benefit in connection with this Agreement or the Loan; and (iv) claims that arise from or relate to (A) this Agreement, (B) the Loan, or any balances on the Loan, (C) advertisements, promotions or statements related to this Agreement or the Loan, (D) your application for any loan or other financing or (E) credit reporting on or related to the Loan.

   b. **Claim Notices.**

   Before beginning a lawsuit, mediation or arbitration, you and we agree to send a notice (a "**Claim Notice**") to each party against whom a Claim is asserted. The Claim Notice will give you and us a chance to resolve our dispute informally or in mediation. The Claim Notice must describe the Claim and state the specific relief demanded. Notice to you may be sent to your billing address or emailed to you. Our sending a billing statement to you, or sending you any other communication advising you that you are delinquent, also constitutes a Claim Notice. You must provide your name, address and phone number in your Claim Notice. Your Claim Notice must be sent to the Notice Address in Section 10.

   c. **Mediation.**

   In mediation, a neutral mediator helps parties resolve a Claim. The mediator does not decide the Claim but helps parties reach agreement. Before beginning mediation, you or we must first send a Claim Notice. Within 30 days after sending or receiving a Claim Notice, you or we may submit the Claim to JAMS (1-800-352-5267, jamsadr.com) or AAA (1-800-778-7879, adr.org) for mediation. We will pay the fees of the mediator. All mediation-related communications are confidential, inadmissible in court and not subject to discovery. All applicable statutes of limitation will be tolled until termination of the mediation. Either you or we may terminate the mediation at any time. The submission or failure to submit a Claim to mediation will not affect your or our right to elect arbitration.

   d. **Arbitration.**

   You or we may elect to resolve any Claim by individual binding arbitration. This election may be made by the party asserting the Claim or the party defending the Claim. Claims will be decided by one neutral arbitrator who will be a retired judicial officer or an attorney with at least ten years of experience; however, if we both agree, we may select another person with different qualifications.

IF ARBITRATION IS CHOSEN BY ANY PARTY, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS PERTAINING TO THAT CLAIM. ARBITRATION PROCEDURES ARE GENERALLY SIMPLER THAN THE RULES THAT APPLY IN COURT, AND DISCOVERY IS MORE LIMITED. THE ARBITRATOR'S DECISIONS ARE AS ENFORCEABLE AS ANY COURT ORDER AND ARE SUBJECT TO VERY LIMITED REVIEW BY A COURT. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS YOU OR WE WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

Before beginning arbitration, you or we must first send a Claim Notice. The party electing arbitration must choose to arbitrate before either JAMS or AAA. However, if we choose one of those two organizations, you may choose the other organization instead if you inform us of that choice within 30 days after we elect arbitration. Claims will be resolved pursuant to this Section and the selected organization's rules in effect when the Claim is filed, except where those rules conflict with this Section. If the rules conflict, the terms of this Agreement will apply. Contact JAMS or AAA to begin an arbitration or for other information. Claims also may be referred to another arbitration organization, if you and we agree in writing, or to an arbitrator appointed pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "**FAA**").

We will not elect arbitration for any Claim you file in small claims court, so long as the Claim is individual and pending only in that court. You or we may otherwise elect to arbitrate any Claim at any time unless it has been filed in court and trial has begun or unless final judgment has been entered. Either you or we may delay enforcing or not exercise rights under this arbitration provision, including the right to arbitrate a Claim, without waiving the right to exercise or enforce those rights.

This arbitration provision is governed by the FAA. The arbitrator will apply applicable substantive law, statutes of limitations and privileges. The arbitrator will not apply any federal or state rules of civil procedure or evidence in matters relating to evidence or discovery. Subject to the limitations of this Section, the arbitrator may award any relief available in court. Any award of punitive damages will be subject to the same limitations as an award of punitive damages in court. The arbitration will be confidential, but you may notify any government authority of your Claim. Judgment upon any arbitration award may be entered in any court having jurisdiction. Arbitration hearings will take place in Salt Lake County, Utah or, upon your request, in the federal judicial district where you reside. We will pay any fees charged by JAMS or AAA in connection with any Claims. You will be responsible for any other costs that you incur in connection with any Claim.

e. **Arbitration Opt-Out; Your Right to Reject Arbitration.**

**YOU MAY REJECT THIS ARBITRATION PROVISION BY CALLING US AT 844-627-2872 (TOLL-FREE), OR WRITING US AT THE NOTICE ADDRESS IN SECTION 10 AND STATING THE FOLLOWING IN YOUR NOTICE (I) YOUR NAME, (II) YOUR ADDRESS, (III) YOUR PHONE NUMBER AND (IV) THAT YOU ARE EXERCISING YOUR RIGHT TO REJECT ARBITRATION UNDER SECTION 18(e) OF YOUR AGREEMENT (A "REJECTION NOTICE"). YOUR REJECTION NOTICE MUST BE RECEIVED WITHIN 90 DAYS AFTER YOUR LOAN AGREEMENT DATE. IF YOUR REJECTION NOTICE COMPLIES WITH THESE REQUIREMENTS, THE ARBITRATION PROVISION IN SECTION 18(d) WILL NOT APPLY TO YOU, EXCEPT FOR ANY CLAIMS SUBJECT TO PENDING LITIGATION OR ARBITRATION AT THE TIME YOU SEND YOUR REJECTION NOTICE. REJECTION OF THE ARBITRATION PROVISION WILL NOT AFFECT YOUR OTHER RIGHTS OR RESPONSIBILITIES UNDER THIS SECTION 18 OR THIS AGREEMENT.**

f. **Class Action Waiver and Other Limitations on Arbitration.**

IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM WILL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE WILL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS, IN A PURPORTED REPRESENTATIVE CAPACITY OR ON BEHALF OF THE GENERAL PUBLIC, OTHER BORROWERS OR OTHER PERSONS. The arbitrator's authority is limited to Claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing. Any arbitration award shall be confidential, and any judgment confirming it will apply only to the specific case and cannot be

used in any other case except to enforce the award. Despite any other provision and without waiving the right to appeal such decision, if any portion of this Section 18(f) is deemed invalid or unenforceable, then the entire arbitration provision set forth in Section 18(d) will not apply.

g. **Survival and Severability of Dispute Resolution Provision.**

This Section 18 will survive payment of all amounts due pursuant to this Agreement, termination of the account, any legal proceeding to collect the Loan, any bankruptcy and any sale of this Agreement, your Loan or any and all rights thereunder. In the case of a sale of this Agreement, your Loan or any and all rights thereunder, the buyer will be bound by and may enforce the terms of this Section 18. If any portion of this Section 18 is deemed invalid or unenforceable, it will not invalidate the remaining provisions of this Section 18 or of this Agreement (except as set forth in Section 18(f)).

**19.  Military Lending Act.**

The Military Lending Act provides protections for certain members of the Armed Forces and their dependents (**"Covered Borrowers"**). If you would like more information about whether you are a Covered Borrower and whether this section applies to you, please call us at 844-627-2872 (toll-free).

a. **Statement of MAPR.**

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependents may not exceed an Annual Percentage Rate of 36%. This rate must include, as applicable to the credit transaction or account: (i) the costs associated with credit insurance premiums; (ii) fees for ancillary products sold in connection with the credit transaction; (iii) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (iv) any participation fee charged (other than certain participation fees for a credit card account).

b. **Oral Disclosures.**

Before signing this Agreement, in order to hear important disclosures and payment information about this Agreement, please call us at 844-627-2872 (toll-free).

**20.  Privacy Notice.**

By executing this Agreement you acknowledge that you received a copy of our privacy notice either on the Loan Agreement Date or within the past 12 months.

**21.  Partial Payments Marked Payment in Full.**

We may process a late payment, a partial payment or a payment marked with any restrictive language. If we do, that action will have no effect on our rights and the restrictive language will have no force or effect.

**22.  Interpretation.**

a. When the words "**including**" or "**includes**" are used in this Agreement they mean "including but not limited to" or "includes but is not limited to".

b. The headings used in this Agreement are for convenience of reference only and are not part of this Agreement.

**23.  State Notices and Special Provisions.**

### All borrowers, including California/New York/Rhode Island/Utah/Vermont Residents

**Credit Reporting.** You authorize us to obtain your consumer report(s) and other information from consumer reporting agencies and/or other third party sources now and on an ongoing basis for use in: (i) servicing, monitoring, collecting or enforcing this Loan or any loan that you may receive from us; (ii) providing your credit data to you; (iii) evaluating you for and offering you other financial products and services; and/or (iv) other related purposes. Upon your request, you will be informed of whether or not a consumer credit report was ordered, and if it was, you will be given the name and address

of the consumer reporting agency that furnished the report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### All Borrowers, including Missouri/Oregon/Utah/Washington Residents

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as you and we may later agree in writing to modify it.**

### All Borrowers, including Iowa and Kansas Residents

**NOTICE TO CONSUMER:**

1. **Do not sign this Agreement before you read it.**

2. **You are entitled to a copy of this Agreement.**

3. **You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

### California Residents

A married applicant may apply for a separate loan.

### Florida Residents

Florida documentary stamp tax required by law has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. 78-8017035097-9

### Iowa Residents

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

### Ohio Residents

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

### Texas Residents

**This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.**

### Married Wisconsin Residents

If you are married: (i) You confirm that this Loan is being incurred in the interest of your marriage or family. (ii) No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless before the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree. (iii) You understand and

agree that we will provide a copy of this Agreement to your spouse for his or her information. **If the Loan for which you are applying is granted, you will notify us if you have a spouse by sending your name and your spouse's name and address, to us at the Notice Address in Section 10 Attention: Wisconsin Resident.**

**Appendix A - Electronic Fund Transfer ("EFT") Authorization**

**Parties; Terms; Consent.** This EFT Authorization ("**Authorization**") is between us and you. Terms used in this Authorization, but not defined, have the same meaning as in the Installment Loan Agreement (the "**Agreement**"). We may from time to time offer you the option to make Loan payments by EFT. EFT services would involve us initiating one or more electronic debits from a deposit account that you specify (the "**Account**"). This Authorization applies to any EFT services that we offer.

**Services and Timing.** The only EFT services that we offer are one-time and recurring EFTs that enable you to make payments on your Loan. If you choose to make a one-time Loan payment by EFT, you authorize us to debit your Account for the amount that you select, on or after the date that you choose. If you choose to make recurring payments on your Loan, you authorize us to initiate recurring debits to your Account for the amount that you specify on or after the dates that you specify at the time of enrollment. If a payment that you have authorized is returned unpaid, you authorize us to seek that payment up to two additional times.

**Business Days.** Our business days are Monday through Friday, excluding federal holidays ("**Business Days**"). If you have agreed to make automatic payments on your due date through our EFT services and your due date falls on a day that we do not process EFTs, we will credit your payment on your due date.

**Canceling this Authorization.** If you wish to cancel this Authorization (and have us stop any and all EFT payments that you have scheduled), write to us at P.O. Box 45400, Salt Lake City, UT 84145-0400, Attn: EFT Payments or call us at 844-627-2872 (toll-free). You must notify us of your desire to cancel this Authorization in such time and manner so as to give us and your depository institution a reasonable opportunity (typically 3 Business Days after our receipt of your cancellation) to act on your request.

**In Case of Error or Questions About Electronic Debits,** call us at 844-627-2872 (toll-free) or write to us at P.O. Box 45400, Salt Lake City, UT 84145-0400 as soon as possible. We must hear from you no later than 90 days after your depository institution sends you the FIRST statement of your Account that shows the problem. When communicating with us regarding an alleged error:

   a. Tell us your name, address and phone number;

   b. Describe the error or transaction you are unsure about and explain why you believe there is an error or need more information; and

   c. Provide the dollar amount of the alleged error.

If you tell us orally, we may require that you send your complaint or question in writing within 10 Business Days.

We will determine whether an error occurred within 10 Business Days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we need more time, we will credit your Account within 10 Business Days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 Business Days, we may not credit your Account.

We will tell you the results within 3 Business Days after completing our investigation. If we decide that there was no error, we will (a) send you a written explanation and (b) reverse any provisional credit that we provided to you. You may ask for copies of the documents that we used in our investigation.

**Our Liability for Failure to Process or Stop Electronic Debits.** We will be liable for your losses or damage if (a) a transaction is not completed as you direct, (b) we do not complete a transfer to or from your bank account on time or in the correct amount, or (c) you have requested that we stop a debit at least 3 Business Days before the scheduled date of the payment and we fail to do so. However, there are some exceptions. We will not be liable to you in the following instances:

   1. If, through no fault of ours, your Account does not contain enough money to complete the transaction;

   2. If the funds in your Account are subject to legal process or other encumbrance restricting the transaction; or

3.  If circumstances beyond our control (such as fire or flood) prevent the transaction, despite reasonable precautions that we have taken.

**Liability for Unauthorized Electronic Debits.** So long as you notify us of any errors in a timely fashion, we will not hold you liable for an EFT that we process if you have not authorized the EFT. Please refer to the section of this Authorization titled "**In Case of Error or Questions About Electronic Debits**" to find out how to contact us if you have a question or believe we made an error.

**Authorization to Correct Errors.** If we make an error in making or seeking any payment that you authorize, you authorize us to correct the error. We will correct the error by initiating an electronic debit or credit, as applicable, to the Account. The debit or credit will be in the amount of the error and will be made on or after the date any such error occurs.

**Limitations.** Each day, you may make only one one-time EFT payment to your Loan. If you initiate a one-time EFT on our website, the EFT may not be for an amount greater than $2,000. Additionally, the total of all EFTs for one day may not exceed the amount required to repay your loan.

**Fees.** We do not charge any fees for processing EFTs.

**Authorization to Vary Amount of Payment.** If any recurring debit will vary from the amount that you authorize, we will send you written notice of the varying amount at least 10 days before we debit your Account.

**Confidentiality.** We will not disclose any information about your Account or EFTs except in the following circumstances:

a.  as necessary to complete EFTs;

b.  to comply with applicable law or government agency or court orders;

c.  if you give us your written permission; or

d.  in accordance with our privacy policy.

## CAUTION–IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT.

**NOTICE TO BORROWER**

a.   DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, EVEN IF OTHERWISE ADVISED.

b.   DO NOT SIGN THIS AGREEMENT IF IT CONTAINS ANY BLANK SPACES.

c.   YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

d.   YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.

**WE AGREE TO THE TERMS OF THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION.**

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT (1) YOU HAVE RECEIVED AND HAVE READ A COMPLETED COPY OF THIS AGREEMENT, INCLUDING APPENDIX A, THE ELECTRONIC FUND TRANSFER AUTHORIZATION, (2) YOU UNDERSTAND THIS AGREEMENT AND (3) YOU AGREE TO ITS TERMS, INCLUDING THE ARBITRATION PROVISION.**

DocuSigned by:

Kim Chatman

A0689E004E4942C...